IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CANTON DROP FORGE, INC. ) <br> 4575 Southway Street ) Case No.: <br> Canton, Ohio 44706 ) <br> ) <br> Plaintiff, ) Judge: <br> ) <br> ) <br> v. ) <br> ) **COMPLAINT FOR** <br> **TRAVELERS CASUALTY AND** ) **DECLARATORY JUDGMENT AND** <br> **SURETY COMPANY f/k/a THE AETNA** ) **BREACH OF CONTRACT** <br> **CASUALTY AND SURETY COMPANY** ) <br> One Tower Square ) **(JURY DEMAND ENDORSED** <br> Hartford, Connecticut 06183 ) **HEREON)** <br> ) <br> Defendant. ) <br> ) <br> ) | |

Plaintiff, Canton Drop Forge, Inc. alleges as follows:

### I. Nature of Action

1. This is a Breach of Contract and Declaratory Judgment Action pursuant to 28 USC §2201(a) and Federal Rule of Civil Procedure 57 concerning the obligations of Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company, under several insurance policies issued to "Canton Drop Forging and Manufacturing Co."

## II. Parties

2. Canton Drop Forge, Inc. ("CDF") is an Ohio corporation headquartered in Canton, Ohio.

4. Defendant Travelers Casualty and Surety Company ("Travelers") is an insurance company organized in the State of Connecticut with its principal place of business in Connecticut. Travelers is engaged in the business of selling insurance and is licensed to do business in the State of Ohio.

5. The Aetna Casualty and Surety Company ("Aetna"), which issued liability insurance policies to CDF, was merged into Travelers in 1997.

6. Standard Fire Insurance Company ("Standard Fire"), which issued liability insurance policies to CDF, is a subsidiary of Travelers.

## III. JURISDICTION AND VENUE

7. Plaintiff CDF is an Ohio corporation and Defendant Travelers is a Connecticut corporation, so there is diversity of citizenship as provided in 28 USC §1332(a) and the amount in controversy exceeds $75,000 exclusive of interest.

8. The Court has personal jurisdiction over Travelers because Travelers is licensed to sell insurance in Ohio and transacts business in Ohio.

9. Venue is proper in this District as the affected property is located in Canton, Ohio and the events giving rise to the claim arose in this District.  28 USC §1391(b)(2).

## IV.  FACTUAL BACKGROUND

### The Facility

10. CDF was founded in 1903 as The Canton Drop Forging and Manufacturing Company, which name was changed to "Canton Drop Forge, Inc." in the late 1980s.

11. CDF originally operated in Canton from a small building with two forging hammers. By 1909, CDF added four forging hammers and moved operations to a larger facility, known as Plant A. In 1942, CDF operated a United States Department of Defense facility known as Plant B, which CDF purchased in 1951. By the mid-1980s, Plant A was shut down and Plant B was the sole operating facility.

12. The CDF facility currently services aerospace, oilfield industry, power generation, mechanical power transmission, off-highway and railways. Primary operations conducted at the Site include receiving raw material; saw-cutting, forging, and heat treatment capabilities; and inspecting, die design, and shipping finished products.

13. Commencing in or around 1942, CDF operated an engineered wastewater recycling and disposal system, which included retention basins, known as Ponds.

14. The manufacturing process wastewater contains oil, water (condensed steam), and cooling water, plus surface water. Prior to 2016, the process wastewater flowed by gravity from catch basins in the vicinity of furnaces and hammers within the forge building to a sub-grade grit chamber and oil-water separator located immediately south of the facility's main forge and furnace shop. Oil captured by the oil-water separator was collected for recycling and effluent from the oil-water separator was discharged to the retention basins, known as Ponds.

15. The CDF wastewater recycling and disposal system, including the Ponds, was designed to capture process water and surface water and contain any potential pollutants.

**The CDF Pond Closure Claim**

16. On January 22, 2013, the United States Environmental Protection Agency ("US EPA") issued a Notice of Violation to CDF related to the accumulation of oil within the Ponds (the "CDF Pond Closure Claim").

17. In the CDF Pond Closure Claim, the US EPA alleged that the accumulation of oil within the Ponds violated the used oil management standards in Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq. and the Used Oil Management Standards set forth in the Ohio Administrative Code and the Code of Federal Regulations.

18. In the CDF Pond Closure Claim, the US EPA alleged that CDF generated waste on the bottom and sides of the Ponds.

19. Congress has determined that "used oil constitutes a threat to public health and the environment when reused or disposed of improperly." 42 U.S.C. § 6901a(3).

20. The Ohio Used Oil Management Standard's closure performance standards require closure in a manner that "[c]ontrols, minimizes or eliminates the extent necessary to prevent threats to human health and the environment, post-closure escape of hazardous waste, hazardous constituents, leachate, contaminated run-off, or hazardous waste decomposition products to the ground or surface waters or to the atmosphere." Ohio Admin. Code 3745-55-11(B).

21. Under Ohio law, surface water and groundwater are considered waters of the State. Ohio Admin. Code 3745-1-02(95).

22. Accordingly, in the CDF Pond Closure Claim, the US EPA alleged CDF's use of the Ponds threatened or caused damage to waters of the State, to public health and to the environment.

23. On September 18, 2014, US EPA and CDF entered a Consent Agreement and Final Order ("CAFO") to resolve the CDF Pond Closure Claim.

24. Pursuant to the CAFO, CDF was assessed a $431,000 civil penalty.

25. Pursuant to the CAFO, CDF was ordered to submit and implement a closure plan for the Ponds through Ohio Environmental Protection Agency ("Ohio EPA") (the "CDF Pond Closure Project").

26. The CDF Pond Closure Project involved removal of all waste and contaminants to achieve clean closure.

27. CDF expended in excess of $5,000,000 in connection with the Pond Closure Project.

28. On August 9, 2016, Ohio EPA issued a final closure letter to CDF certifying that CDF completed final closure of the Ponds.

29. CDF continues to incur costs related to groundwater investigation at the site.

## The Policies

30. Upon information and belief, CDF maintained liability insurance coverage issued by Aetna or other Travelers entities between 1945 and 1981.

31. Specifically, CDF has identified the following insurance policies that Aetna issued to CDF:

|   | Coverage Type | Policy number | Effective Dates | Limits of liability |
|---|---|---|---|---|
| a. | General Liability | 2 PP 16470 | 1945 | Unknown |
| b. | General Liability | 2 AL 2116 | 12/22/1952 – 12/22/1953 | unknown |
| c. | General Liability | 02 AL 205086 CMA | 01/01/1973-01/01/1974 | $1,000,000 |

5

|   | Coverage Type | Policy number | Effective Dates | Limits of liability |
|---|---|---|---|---|
| d. | Umbrella | RDU 9753104 | 04/24/1972-04/24/1975 | $8,000,000 |
| e. | Comprehensive General Liability | 02 AL 802341 CMA | 01/01/1975-01/01/1976 | $1,000,000 |
| f. | Excess Indemnity (Umbrella) | 02 XS 802341 WCA | 04/24/1975-01/01/1976 | $18,000,000 |
| g. | Comprehensive General Liability | 02 AL 802341CMA | 01/01/1976-01/01/1977 | $1,000,000 |
| h. | Excess Indemnity (Umbrella) | 02 XS 802341 WCA | 01/01/1976-01/01/1977 | $18,000,000 |
| i. | Comprehensive General Liability | 02 GL 15014 CCA | 01/01/1979-01/01/1980 | $1,000,000 |
| j. | Excess Indemnity (Umbrella) | 02 XS 4326 WCA | 01/01/1979-01/01/1980 | $18,000,000 |
| k. | Comprehensive General Liability | 02 GL 54294 CCA | 01/01/1980-01/01/1980 | $1,000,000 |
| l. | Excess Indemnity (Umbrella) | 02 XS 4811 WCA | 01/01/1980-01/01/1981 | $18,000,000 |
| m. | Excess Indemnity (Umbrella) | 02 XS 61690 WCA | 01/01/1981-01/01/1982 | $18,000,000 |

(a., b., c., e., g., i. k., collectively, the "GL Policies;" d., f., h., j., l., m., collectively, the "Excess Policies").

32. CDF has identified the following Comprehensive General Liability Policy that Standard Fire issued to CDF: number 02 GL 58420 CCS, effective 01/01/1981-01/01/1982, with a $1,000,000 limit of liability.  Travelers is in possession of copies of the Policies and they are too voluminous to attach to this Complaint.

33. CDF has requested Travelers to "search its archives" for specific policies believed to have been issued by Aetna to CDF during the relevant time period.

6

34. In a letter to CDF's attorney dated August 14, 2017, Travelers stated: "we have located information in our records which suggests we may have issued potentially applicable policies for various periods between 1945 through 1981; however, we have been unable to locate actual copies of these purported policies."

35. Upon information and belief, CDF maintained general liability insurance coverage and excess indemnity insurance coverage through Aetna from at least 1945 through 1981.

36. Pursuant to the terms of the GL Policies, Travelers (through Aetna and Standard Fire) agreed to indemnify CDF for sums it became obligated to pay because of bodily injury or property damage caused by an occurrence.

37. Pursuant to the terms of the Excess Policies, Travelers (through Aetna) agreed to "indemnify the insured for ultimate net loss in excess of the applicable underlying limit which the insured shall become legally obligated to pay as damage because of…Property Damage…to which this policy applies."

38. The CDF Pond Closure Claim alleges property damage caused by CDF's use of the CDF wastewater recycling and disposal system.

39. CDF was legally obligated to complete the CDF Pond Closure Project.

40. Travelers is obligated to indemnify CDF for all sums expended in connection with the CDF Pond Closure Project.

41. The GL Policies and Excess Policies effective before 1973 do not exclude coverage for pollution.

42. The "pollution exclusion" only applies to "the discharge, dispersal, release or escape of … contaminants or pollutants." There is no allegation or evidence of discharge, dispersal, release or escape of any contaminant of pollutant associated with the CDF Pond Closure Claim. Ohio law recognizes coverage for environmental contamination caused by initial placement of pollutants in a confined disposal system, such as the Ponds. *See, Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St. 3d 512, 519-20 (2002).

43. Coverage for the CDF Pond Closure Claim is not barred by the "pollution exclusion."

44. Coverage for the CDF Pond Closure Claim is not otherwise barred or abrogated.

45. On November 30, 2016, CDF tendered a claim for coverage for the CDF Pond Closure Claim to Travelers under numerous policies of insurance issued to CDF by Travelers and related entities, including the Policies.

46. Despite several requests for coverage, Travelers has not accepted its coverage obligation related to the CDF Pond Closure Claim.

## V. FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT

47. CDF repeats and realleges paragraphs 1 through 46 as if fully set forth here.

48. By failing to indemnify CDF for the costs of the CDF Pond Closure Claim, Travelers failed to honor its contractual obligations to CDF under the Policies. CDF has incurred an ultimate net loss of over $5,000,000 to date in response to the CDF Pond Closure Claim.

49. As a result of the repeated failure to accept coverage for the CDF Pond Closure Claim, an actual and justiciable controversy exists between CDF and Travelers regarding the contractual obligations of Travelers under the Policies concerning the CDF Pond Closure Claim. This court can resolve the controversy through a declaratory judgment under 28 USC §2201(a).

50. CDF requests that this court declare that Travelers is obligated under 28 USC §2201(a), FRCP 57, Ohio Law and the Policies to indemnify CDF for a least $5,000,000 in past and future loss resulting from the CDF Pond Closure Claim.

### VI. SECOND CAUSE OF ACTION – BREACH OF CONTRACT

51. CDF repeats and realleges paragraphs 1 through 50 as if fully set forth here.

52. By failing to indemnify CDF for the costs of the CDF Pond Closure Claim, Travelers breached its contractual obligations under the Policies. CDF incurred an ultimate net loss of over $5,000,000 to date in response to the Pond Closure Claim.

53. Travelers has breached its insurance contracts with CDF.

54. As a result of this breach of contract, CDF is entitled to at least $5,000,000 in damages for the breach of contract by Travelers.

WHEREFORE, CDF requests the following relief:

    a. Concerning the Request for Declaratory Relief, an Order stating that the Travelers is obligated to reimburse CDF for past and future losses in an amount exceeding $5,000,000;

    b. Concerning the Breach of Contract, an Order stating that the Travelers breached the Policies, entitling CDF to recover its loss related to the CDF Pond Closure Claim in excess of $5,000,000;

  c.  Prejudgment interest as provided under Ohio law;

  d.  Costs of this action including attorney's fees; and

  e.  Any further relief as may be deemed just and property by this Court.

        Respectfully submitted,

        s/ Gregory J. DeGulis
        Gregory J. DeGulis (0045705)
        Erin M. McDevitt-Frantz (0095134)
        McMAHON DeGULIS LLP
        The Caxton Building — Suite 650
        812 Huron Road
        Cleveland, OH 44115-1126
        P. (216) 621-1312
        F. (216) 621-0577
        gdegulis@mdllp.net
        efrantz@mdllp.net

        s/ Richard A. Green
        Richard A. Green (0021732)
        RICHARD A. GREEN CO., L.P.A.
        555 Ravine View
        Akron, OH 44303
        P. (303) 808-2129
        F. (303) 777-3292
        RickGreen@insideoutsidelawyer.net

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, CDF requests a jury trial for issues so triable.

s/ Gregory J. DeGulis<br>
Gregory J. DeGulis (0045705)